## A01A1605. GORDON v. THE STATE.
(555 SE2d 793)

BLACKBURN, Chief Judge.

In his second appeal before this Court,[1] Charles Edward Gordon appeals his convictions for aggravated assault with intent to rape and false imprisonment, contending that his trial counsel was ineffective by (1) failing to move for directed verdict on the specific grounds that it was impossible for Gordon to be convicted of assault with intent to rape a male and (2) failing to present certain mitigation evidence during the sentencing phase. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict." *Cox v. State*.[2] So viewing, the record reveals that Gordon grabbed his 16-year-old male victim, who possessed feminine features, and forced him into a nearby alley, attempted to remove the victim's pants, and demanded sex. During the struggle, Gordon pulled down his own pants and exposed his penis, which already had a condom on it, and made threatening remarks to the victim which indicate that he believed the victim was a female.

"The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." *Chapman v. State*;[3] see *Nickerson v. State*.[4]

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations omitted.) *Chapman,* supra at 349-350 (2); see also *Strickland v. Washington*;[5] *Mobley v. State*;[6] *Johnson v. State*.[7] Gordon's counsel is presumed to have rendered adequate assistance and made

---

[1] After his conviction, Gordon appealed to this Court. *Gordon v. State*, 244 Ga. App. 265 (535 SE2d 289) (2000). On appeal, we found no grounds for reversal of the convictions, but we remanded the case for the determination of whether Gordon received effective assistance of counsel. Id.

[2] *Cox v. State*, 241 Ga. App. 388, 389 (526 SE2d 887) (1999).

[3] *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

[4] *Nickerson v. State*, 248 Ga. App. 829, 831 (2) (545 SE2d 587) (2001).

[5] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[6] *Mobley v. State*, 271 Ga. 577, 578 (523 SE2d 9) (1999).

[7] *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996).

all significant decisions in the exercise of reasonable professional judgment. *Nickerson,* supra at 831 (2). " 'To show deficient performance, [Gordon] must demonstrate that his [trial] counsel's performance was not reasonable under the circumstances confronting his [trial] counsel at the time, without resorting to hindsight.' " Id.

1. Gordon contends that his trial counsel was ineffective by failing to move for a directed verdict on the grounds that it was legally impossible for Gordon to be convicted of assault with the intent to rape a male.[8] However, Gordon's premise that he could not be convicted for assault with intent to rape a person who is a male is mistaken. Gordon's belief that the victim was a female, and his actions taken toward such victim, were sufficient to establish his intent to "rape" (i.e., have carnal knowledge with a female). That the victim turned out to be a male, rendering an actual rape impossible, does not affect his culpability.

Under Georgia law, a defendant who "attempts" to commit a crime cannot use impossibility as a defense when the act would have been possible if "the attendant circumstances [had] been as the accused believed them to be." OCGA § 16-4-4; *Howell v. State*[9] (" '[i]t is not necessary that the contemplated murder be factually possible. It is sufficient if it was apparently possible to the defendant' "). With "intent" to commit a crime an essential element to the crime of "attempt" to commit the same act, it follows that impossibility would similarly fail as a defense to an "intent" crime. Id. at 454 (4). In fact, courts consider the use of the impossibility defense to be even weaker in connection with an "intent" crime than with an "attempt" crime. See *Scroggins v. State,*[10] overruled on other grounds, *Dunagan v. State*[11] (the defendant's intent and belief that he could transmit HIV through a bite were determinative, and that it might have been impossible to do so "is even less a defense to the charge of assault 'with *intent* to murder' than it would be to an accusation of *attempt* to murder, since an 'attempt' requires a more substantial act towards completion than does mere 'intent' ") (emphasis in original).

In this case, Gordon thought that the victim was a female, and the evidence supported a finding that Gordon intended to rape the victim. The fact that it would have been impossible to do so is no defense. That Gordon thought the alleged victim was a female would support his conviction of aggravated assault with intent to rape.

---

[8] At trial, Gordon's trial counsel moved for directed verdict on all counts generally. However, in connection with such motion, trial counsel did not specifically argue that Gordon could not be convicted of aggravated assault with intent to rape a male.

[9] *Howell v. State,* 157 Ga. App. 451, 456 (4) (278 SE2d 43) (1981).

[10] *Scroggins v. State,* 198 Ga. App. 29, 33-34 (1) (b) (401 SE2d 13) (1990).

[11] *Dunagan v. State,* 269 Ga. 590, 593 (2) (a) (502 SE2d 726) (1998).

For these reasons, had Gordon's trial counsel filed a motion for directed verdict on this specific ground, he would not have been successful. "Trial counsel's failure to pursue a futile motion does not constitute ineffective assistance." (Punctuation omitted.) *Nickerson,* supra at 832 (2) (b). We find no error.

2. Gordon also argues that his trial counsel was ineffective because "he failed to present *any* mitigatory evidence (or any argument of *substance*) at the sentencing hearing." Gordon does not cite to the record, case authority, or otherwise explain his claim contained in parentheses that his trial counsel failed to present "any argument of substance." Thus, this portion of the enumeration is deemed abandoned. See Court of Appeals Rule 27 (c) (2).

Further, in connection with the trial counsel's failure to present mitigation witnesses during the penalty phase of trial,

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

(Punctuation omitted.) *Huff v. State;*[12] *Nicholson v. State.*[13] The "burden was on [Gordon] to inform his counsel of any [mitigation witnesses], and most assuredly to be totally honest with counsel. A self-induced error is too close to premeditated error, hence beyond further appellate scrutiny." *Huff,* supra at 115; see also *Mack v. State*[14] (where defendant "did not assist his counsel and was not forthcoming with information[, h]e cannot now complain of counsel's alleged deficiencies that were caused by his own failure to communicate and fully cooperate with counsel").

During the trial court's hearing on Gordon's ineffective assistance claim, Gordon proffered his cousin, James Roberts, and Roberts' wife, Linda, who testified that Gordon had problems with drugs and alcohol, that he had fallen into a downward spiral of drug use, and that they would have testified if they had been called to do so. However, Gordon had never talked to his trial counsel about these witnesses or his alleged substance abuse problems, despite meeting and talking to trial counsel on several occasions prior to trial. In fact,

---

[12] *Huff v. State,* 224 Ga. App. 115 (479 SE2d 476) (1996).
[13] *Nicholson v. State,* 265 Ga. 711, 714 (4) (462 SE2d 144) (1995).
[14] *Mack v. State,* 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000).

at all relevant times, Gordon continued to maintain that he was the victim, not the perpetrator. Gordon's trial counsel testified that

> Charles' defense wasn't that he was under the influence at the time. His defense had been that he had been attacked and robbed, that he was the injured party and not the — and should not have been charged. . . . Based upon that we didn't do any additional investigation as far as mitigation went. . . . I don't believe we discussed mitigation witnesses at all.

Gordon continued to maintain his innocence, and during the penalty phase, trial counsel simply requested that the court be lenient because Gordon was intoxicated at the time of the incident.

Gordon's trial counsel was not required to anticipate that Gordon was less than truthful about the events which occurred and potential mitigating reasons for such occurrences. Trial counsel's failure to discover and present the Robertses' testimony was not unreasonable. We limit our review to the trial counsel's failure to discover and call these two witnesses only, since Gordon has not proffered any other alleged mitigation evidence. See *Pace v. State*;[15] *Barber v. State*.[16]

The cases relied upon by Gordon are distinguishable because they involve situations where the defendant suffered a documented history of mental illness, of which trial counsel was well aware. For example, in *Turpin v. Christenson*,[17] trial counsel noticed during his representation that defendant was "aloof and detached," even having problems with simple communication skills. The defendant had an "extensive history of psychiatric problems and substance abuse," with a genetic disposition toward alcohol abuse, and had been placed in a psychiatric hospital for inpatient treatment just three years prior to the murder. Id. at 234-235 (12) (B). The defendant was actually evaluated by a state psychologist for a determination of whether he was competent to stand trial. Id. at 235. In finding that counsel was ineffective during the penalty phase, the court found that counsel "possessed a wealth of information regarding [defendant's] psychiatric problems and drug abuse, which they essentially ignored. *This is not a situation where trial counsel was unaware of their client's psychiatric problems before trial.*" (Emphasis supplied.) Id. at 239 (12) (B). In contrast, the present situation *is* one in which trial counsel was unaware of his client's psychiatric problems before trial.

---

[15] *Pace v. State*, 239 Ga. App. 506, 510 (7) (521 SE2d 444) (1999).

[16] *Barber v. State*, 236 Ga. App. 294, 299 (5) (512 SE2d 48) (1999).

[17] *Turpin v. Christenson*, 269 Ga. 226, 234 (12) (B) (497 SE2d 216) (1998).

Thus, *Christenson* is distinguishable.

Similarly, trial counsel in *Turpin v. Lipham*[18] was faced with a defendant who had been institutionalized in mental facilities for nine years. Numerous pages of records documenting his illness were generated over that period of time. Counsel not only knew of this history, but also made it a "centerpiece" of the defense. What the court found unreasonable, however, was counsel's decision to forgo hiring a mental health expert to review the 2,500 pages of records. Id. at 217. In contrast, the "centerpiece" of Gordon's defense was his alleged innocence, not his mental impairment. Moreover, not one record document has been identified which would have even suggested to trial counsel that his client suffered from a mental impairment, let alone one which would require additional investigation. *Zant v. Pitts*,[19] rev'd on other grounds, *Turpin v. Hill*,[20] is also distinguishable, since trial counsel "had at their disposal" mental health expert reports demonstrating that the defendant was "mildly mentally retarded." Furthermore, *Zant v. Hamilton*[21] is not instructive. There, the Supreme Court did not conduct an analysis of what representations defendant made to counsel or what information counsel otherwise had at his disposal, and the Court simply determined that the superior court's finding that witnesses could have been located through investigation was not clear error. Id. at 555 (3). Thus, the authority cited is not applicable.

In any event, even if Gordon's trial counsel was unreasonable in not discovering and presenting the Robertses' testimony, we agree with the trial court that Gordon failed to demonstrate prejudice. The trial court's finding that the witness testimony "indicates that these witnesses were only marginally familiar with the defendant's character" and that "it is highly unlikely that introduction of the testimony of these witnesses would have been beneficial to the defendant" was not clearly erroneous.

Because Gordon failed to show that his trial counsel's actions fell below an objective standard of reasonableness, the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Pope, P. J., and Miller, J., concur. Mikell, J., disqualified.*

DECIDED OCTOBER 23, 2001.

---

[18] *Turpin v. Lipham*, 270 Ga. 208, 216-217 (3) (B) (3) (510 SE2d 32) (1998).

[19] *Zant v. Pitts*, 263 Ga. 529 (436 SE2d 4) (1993).

[20] *Turpin v. Hill*, 269 Ga. 302, 304 (4) (498 SE2d 52) (1998).

[21] *Zant v. Hamilton*, 251 Ga. 553 (307 SE2d 667) (1983).

*Thomas J. Gustinella*, for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.